CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 3 0 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| STEPHANIE L. WHINDLETON, | ) |
| | ) Civil Action No. 3:13-CV-00055 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| COACH, INC. AND COACH | ) |
| LEATHERWARE OF VIRGINIA, INC., | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendants. | ) |

Plaintiff Stephanie Whindleton filed this complaint against Defendant Coach, Inc. ("Coach"),[1] alleging that Coach violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The case is presently before the court on a motion for summary judgment filed by Coach. For the following reasons, that motion will be granted.

## Factual and Procedural History

Unless otherwise indicated, the following facts from the summary judgment record are either undisputed or are presented in the light most favorable to Whindleton. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Whindleton has pretibial myxedema, a condition associated with Graves Disease, which limits her ability to stand and walk for long periods of time due to swelling and pain in her legs. In early 2012, the Social Security Administration determined that Whindleton cannot "work eight hour days on a regular, sustained basis and that she is disabled from substantial work activity." SSA Decision at 5; Pl.'s Br. in Opp. Ex. B, ECF No. 23-2. Whindleton receives disability benefits.

---

[1] Whindleton also named Coach Leatherware of Virginia, Inc. ("Leatherware") as a defendant in her complaint. The defendants have moved for summary judgment as to any claim against Leatherware, arguing that the undisputed facts demonstrate that Leatherware does not have any employees, and is therefore not an "employer" subject to liability under the ADA. See 42 U.S.C. § 12111(5)(a) (defining an "employer" as an entity that employs more than fifteen employees). Whindleton has not offered any evidence or argument to the contrary. The court will grant summary judgment in Leatherware's favor and will therefore consider only claims against Coach in this opinion.

Whindleton was a "fairly frequent" customer at Coach's Charlottesville retail store during the time period relevant to this case. Whindleton Aff. ¶ 1, Pl.'s Br. in Opp. Ex. A, ECF No. 23-1. She became acquainted with Amanda Strukl, the store's manager, and Donna Entezam, the store's assistant manager, during her visits as a customer. At some point, Whindleton disclosed to Strukl and Entezam that she had a disability that prevented her from standing for long periods of time; however, Whindleton did not disclose the precise nature of her condition or how it affected her ability to work.

In April 2013, Coach was looking for a part-time employee to work between eight and fifteen hours per week. Both Strukl and Entezam encouraged Whindleton to apply for the position. Entezam told Whindleton that she was a particularly viable candidate, because her schedule would permit her to open the store at 10:00 a.m. Based on this encouragement, Whindleton submitted an application for employment on April 5, 2013. See Def.'s Mot. Summ. J. Ex. 7, ECF No. 17-8. On her application, Whindleton specifically noted that she was available to work three mornings each week. Id. Although Whindleton has prior retail sales experience, she did not include this information on her application. Id. Whindleton believed that she would be able to manage her disability in this part-time position, particularly if "she could retreat to the back of the [s]tore to elevate her legs" during slow periods. Pl.'s Br. in Opp. at 3.

Crotia Garner, Coach's District Manager for the Mid-Atlantic Region, interviewed Whindleton for twenty minutes on April 23, 2013. See Garner Dep. 8-9, Def.'s Mot. Summ. J. Ex. 3. According to Garner, she reviewed Whindleton's application prior to the interview and determined that Whindleton was not qualified for the part-time position because she had no prior sales experience and was not available during the store's peak hours. Id. at 13-14. Garner stated that she nonetheless decided to interview Whindleton to determine whether she would be a candidate for future employment opportunities, including a seasonal position. Id. at 27-28. During

the interview, Garner asked Whindleton why, given her affinity for Coach products, she had waited so long to apply to work for the company. See Whindleton Dep. At 48-49, 75; Def.'s Mot. Summ. J. Ex. 4. Whindleton replied that she "suffered from a disability," and had previously been concerned about how the disability would affect her ability to do the job. Id. Garner did not ask, and Whindleton did not disclose, any additional information about her disability at that time. Id. At the close of the interview, Garner asked Whindleton to complete a background check form and told Whindleton that Coach would contact her about her application.

On or around May 1, 2013, Strukl contacted Whindleton by phone. Id. at 107-108. Strukl stated that the interview with Garner had gone well, but that Coach needed to know more about Whindleton's disability to proceed with her candidacy. Id. at 85. At that time, Whindleton disclosed the nature of her disability and extent of her symptoms. Id. Strukl, who also has Graves Disease, was skeptical that Whindleton could manage her symptoms effectively while working at Coach. Id. at 93-94. Strukl also asked Whindleton whether she took any medications related to her disability. Id. Strukl ended the conversation by telling Whindleton that issues in the Charlottesville store might prevent them from hiring anyone at that time. Id. at 105. Whindleton was not contacted again about the position, and she later learned that Coach had hired another applicant. Id.

After learning that she was not offered the position with Coach, Whindleton filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"). After receiving a Right to Sue letter from the EEOC on September 27, 2013, Whindleton initiated this lawsuit on December 23, 2013. On January 27, 2015, Coach moved for summary judgment as to Whindleton's claims. The court held a hearing on that motion on January 27, 2015. The motion has been fully briefed and is ripe for review.

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor. Id. at 255; see also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

Coach's motion sets forth several arguments in support of its contention that summary judgment should be granted on Whindleton's "failure to hire" claim. Whindleton argues, however, that "[c]ontrary to Coach's argument, Ms. Whindleton seeks relief on two separate grounds, neither of which asserts a failure to hire claim under the [ADA]." Pl.'s Br. in Opp. at 8. At oral argument, Whindleton's counsel again asserted that Whindleton does not seek to recover for Coach's failure to hire her for the part-time position. Instead, Whindleton asserts two specific claims for relief: First, that Coach failed to adhere to the ADA's limitations on pre-employment medical inquiries; and second, that Coach discriminated against her as a job applicant on the basis of her disability. The court has considered each of these claims and finds that neither survives summary judgment.

### I. Preemployment Inquiry Claim:

Whindleton claims that, after she completed her interview with Garner, Strukl called her to ask about her disability and how it would affect her work at Coach. The ADA prohibits an employer from "mak[ing] inquires of a job applicant as to whether such applicant is an individual

with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). An employer "may make preemployment inquiries into the ability of an applicant to perform job-related functions," however. Id. § 12112(d)(2)(A). Coach argues that this claim fails because Whindleton has not shown that she suffered any injury as a result of Strukl's questions. The court agrees that Whindleton has failed to forecast any evidence suggesting that she suffered injury <u>as a result of Strukl's questions</u>.

"Damages under [S]ection 12112(d) of the ADA must be based not merely on a technical violation of the statute but on some cognizable injury-in-fact <u>of which the statutory violation is a legal and proximate cause</u>." Mickens v. Polk County Sch. Bd., 430 F. Supp. 2d 1265, 1278 (M.D. Fla. 2006) (citing Tice v. Centre Area Transport. Auth., 247 F.3d 506, 520 (3d Cir. 2001)) (emphasis added); see also Griffin v. Steeltek, Inc., 261 F.3d 1026, 1028 (10th Cir. 2001) ("[M]erely being ask[ed] the impermissible question is not sufficient, by itself, to inflict a cognizable injury."); Armstrong v. Turner Indus., Inc., 141 F.3d 554, 562 (5th Cir. 1998) (affirming dismissal of ADA claim based on improper medical examination for lack of cognizable injury). Thus, even assuming that Whindleton has established that she was still being considered for employment at the time of Strukl's phone call and that Strukl's questions violated the ADA, Whindleton must also demonstrate that she suffered an actual injury as a result of those illegal questions. In this case, Whindleton maintains that she is not seeking to recover for any economic loss suffered as a result of Coach's decision not to hire her. She argues, however, that the emotional distress she experienced as a result of Strukl's questions constitutes a cognizable injury.[2]

The court believes that a plaintiff may establish an actionable ADA claim arising out of the application process even in the absence of a claim of failure to hire. It is unclear, however, whether

---

[2] Whindleton has factually distinguished her claim from those considered in Griffin and other appellate decisions on this issue. Nonetheless, the court remains convinced that Whindleton fails to forecast any evidence of a causal connection between her alleged emotional injuries and Strukl's allegedly illegal questions.

emotional injury alone is sufficient to maintain a claim under § 12112(d). Some courts suggest that any "actual damage (emotional, pecuniary, or otherwise)" that a plaintiff suffers as the result of an illegal inquiry may be enough to maintain a § 12112(d) claim. Tice, 247 F.3d at 519; see Cossette v. Minn. Power & Light, 188 F.3d 964, 971-72 (8th Cir. 1999) (remanding for consideration of whether plaintiff's claimed injury of "being treated in a condescending and patronizing manner" was a "tangible injury" sufficient to support a claim under § 12112(d)). Other courts suggest that an impermissible inquiry claim brought under § 12112(d), like a disability discrimination claim brought under § 12112(a), requires evidence of an adverse employment action. See Armstrong, 141 F.3d at 560. The Fourth Circuit has not addressed this issue.

Ultimately, this court need not address it either, because it is beyond dispute that an emotional injury requires more than mere "allegations of mental/emotional distress, mental anguish, stress, and inconvenience;" it also requires "evidence as to the actual existence of such harms." Tice, 247 F.3d at 520. Whindleton alleges in her complaint that she experienced "mental anguish, loss of enjoyment of life, pain and suffering, and other non-pecuniary loss" as a result of Strukl's questioning. See Compl. ¶ 28, ECF No. 1. But Whindleton has produced no evidence, from her deposition, affidavit, or elsewhere, suggesting that she actually experienced such harms, much less that those harms were proximately caused by Coach's statutory violation. "Bare allegations" of emotional distress are not sufficient to maintain a claim under § 12112(d) of the ADA. Giaccio v. City of New York, 502 F. Supp. 2d 380, 387 (S.D.N.Y. 2007); see also Russell v. City of Mobile, No. 11-0267, 2013 WL 1567372, at *7 (S.D. Ala. April 12, 2013) (granting summary judgment for defendants on plaintiff's claim when plaintiff failed to show any "loss of sleep, loss of appetite, social stigma, loss of companionship, increased stress, loss of focus, clinical depression, or any other legally cognizable measure of non-economic injury that occurred as a result of [the defendant's] alleged violation of § 12112(d)"). The court will thus grant summary judgment on this

claim.

## II. Disability Discrimination Claim:

Whindleton also claims that Coach discriminated against her as a job applicant on the basis of her disability, in violation of the ADA. "Discrimination" under the ADA includes "limiting, segregating, or classifying a job applicant…in a way that adversely affects the opportunities or status of such applicant…because of the disability of such applicant." 42 U.S.C. § 12112(b)(1). Generally, in order to succeed on a disability discrimination claim, a plaintiff must first show that she is within the ADA's protected class and that she suffered an adverse employment action based on her disability. See Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995). If a plaintiff proves this prima facie case, the defendant must articulate a legitimate, nondiscriminatory explanation for its employment decision. Id. The plaintiff then bears the ultimate burden of proving that the defendant's proffered explanation is pretext for discrimination. Id. Coach argues that Whindleton has failed to establish a prima facie case of disability discrimination here, because she has not shown that she suffered any adverse employment action based on her disability. The court agrees.

Whindleton claims that, after she revealed the nature and severity of her disability to Strukl, Coach limited her opportunities as a job applicant. Specifically, Whindleton asserts that Coach "no longer considered [her] application and denied her the opportunity of continuing the application process." Pl.'s Br. in Opp. at 15. It bears repeating that Whindleton has explicitly and repeatedly stated that she does not base her claim on Coach's failure to hire her for the part-time sales position to which she applied in April 2013. See Pl.'s Br. in Opp. at 8, 15. Instead, Whindleton argues that Coach's failure to consider her for future employment opportunities constitutes an adverse employment action.

Even assuming that removal of an applicant from consideration for future employment constitutes an adverse employment action actionable under the ADA, the summary judgment record does not support Whindleton's claim that Coach did so. Coach has produced evidence suggesting that it considered Whindleton a viable applicant for future employment, both before and after it learned the extent of her disability. Garner testified that, although she determined Whindleton was not a candidate for the part-time position after reviewing her written application, she nonetheless interviewed Whindleton to explore whether she would qualify for seasonal employment, which would not require the same availability and experience as the part-time job. After the interview, during which Garner first learned about Whindleton's disability, Garner wrote in her notes that Whindleton might be a candidate for future seasonal opportunities. See Interview Notes, Def.'s Mot. Summ. J. Ex. 10. Strukl also testified that, during their telephone conversation, after discussing the nature of Whindleton's disability with her, she told Whindleton that she "really was looking forward to her joining our team at holiday." Strukl Dep. 21, Pl. Br. in Opp. Ex. 3.

Whindleton has offered no evidence suggesting that Coach removed her from consideration for future employment after learning that she was disabled or after discovering the extent of her disability. In fact, Whindleton admits that she never pursued any other employment opportunities at Coach. See Whindleton Dep. 120:1-8; Def.'s Reply Ex. 1, ECF No. 24-1. Indeed, Whindleton received her Right to Sue letter from the EEOC on September 27, 2013, well before any seasonal opportunities might have presented themselves to her. See Compl. ¶ 8.

The summary judgment record simply does not reflect that Coach removed Whindleton from consideration for future employment or that it took any adverse employment action against her other than not selecting her for the part-time position – a decision that Whindleton herself agrees did not injure her. Without evidence of any adverse employment action, Whindleton's disability discrimination claim fails. The court will thus grant summary judgment on that claim.

## Conclusion

For the reasons stated, the defendants' motion for summary judgment will be granted. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 30th day of January, 2015.

*/s/ Glen Conrad*
Chief United States District Judge